**City of Aurora**

City Attorney's Office
15151 East Alameda Parkway, 5th Floor
Aurora, Colorado 80012
Phone: (303) 739-7030
www.auroragov.org

March 1, 2021

The Honorable R. Brooke Jackson
United States District Court for the District of Colorado
Alfred A. Arraj United States Courthouse, A938
901 19th Street
Denver, Colorado 80294-3589

RE:     Baker v. City of Aurora, et al.
        Civil Action No.: 20-cv-03612-RBJ
        Letter regarding Motion to Dismiss

Dear Judge Jackson:

## CONFERRAL

Pursuant to the Practice Standards of Judge R. Brooke Jackson, revised December 8, 2020, "Motions and Briefs," Counsel for Aurora and counsel for Plaintiff conferred extensively regarding Aurora's contention that Plaintiff has not stated a claim against Aurora. Counsel for Plaintiff indicated on February 23, 2021, that he would voluntarily dismiss claims 1, 2, 4, and 5.

## INTRODUCTION

On December 17, 2018, Plaintiff's decedent was arrested by Aurora Police Officers and later died. Plaintiff's counsel has agreed to voluntarily dismiss claims 1, 2, 4, and 5 from the Complaint. In the sole remaining claim, Plaintiff alleges that decedent's death was a result of a lack of training by the Aurora Police Department.

## ALLEGATIONS AGAINST AURORA IN THE COMPLAINT

Plaintiffs make the following allegations in the Complaint:

    1.     Defendant City of Aurora is a municipal corporation organized in and by the state of Colorado. It may sue and be sued under 42 U.S.C. section 1983 for municipal policies and practices which violate the constitutional rights of persons like David Baker and for wrongful death and may be held responsible for the reckless, grossly negligent and/or negligent acts of its employees. [# 1, ¶ 4.][1]

---

[1] Aurora uses "[#]" to refer to entries in the CM/ECF Court filing system.

2. On December 17, 2018, at the decedent's place of residence at 10653 E. Jewell Avenue, Aurora, in and outside apartment G-148, between seven and ten members of the defendant City of Aurora Police Department engaged in excessive force against David Baker, ultimately causing his death. [# 1, ¶ 8.]

3. The use of such a chokehold was not forbidden by the City of Aurora Police Department, an agency of the municipal government. [# 1, ¶ 14.]

4. By December 17, 2018, the use of such chokeholds had been routinely condemned both by experts in law enforcement administration and in and by numerous legal precedents. [# 1, ¶ 15.]

5. The police chief of the City of Aurora publicly lauded the members of his department for this homicide, finding no failing in their use of excessive force as described above and falsely narrating the events as between his subordinates and the decedent. [# 1, ¶ 19.]

6. Defendant City of Aurora did not punish or sanction those who engaged in this excessive force against the decedent, reinforcing the longstanding tolerance of excessive force by the City of Aurora Police Department, particularly against persons of color. [# 1, ¶ 20.]

7. Defendant City of Aurora's failure to properly train defendant officers to de-escalate such a situation predictably and foreseeably led to the homicide they committed. [# 1, ¶ 23.]

8. As a direct and proximate cause of the failure to train officers both with regard to proper de-escalation techniques and the impermissibility of applying a chokehold to a person situate as the decedent was, defendant City of Aurora is jointly responsible for Baker's death. [# 1, ¶ 24.]

9. By failing to train the individual defendant police officers with respect to the de-escalation of situations like that presented here and by failing to forbid the use of a chokehold upon an already restrained civilian, defendant City of Aurora violated the Fourth Amendment rights of David Baker, as made actionable by 42 U.S.C. section 1983, and caused him conscious pain and mental suffering. [# 1, ¶ 32.]

## CLAIMS

The Court should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Waller v. City and County of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). Because the Complaint only makes conclusory allegations as to the policy or custom, this Court should dismiss the *Monell* claim against the City. *See Erikson v. Pawnee County Bd. of County Com'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001).

Contrary to Plaintiff's allegations, chokeholds were specifically permitted under Colorado law in 2018. "A peace officer is justified in using a chokehold . . ." in certain situations. *C.R.S.A. §18-1-707(2.5) (a) effective: June 30, 2016, repealed effective: January 1, 2021.*

In limited circumstances, a municipality may be liable under §1983 for a failure to train. *City of Canton v. Harris*, 489 U.S. 378 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson,* 563 U.S. 51, 61 (2011); see also *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985). (A policy of inadequate training is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). Thus, a municipality's failure to train its employees may serve as the basis for Section 1983 liability only where that failure amounts to deliberate indifference to the rights of citizens. *Canton*, 489 U.S. at 388-89. A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability." *Id*. at 392. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, *supra* at 62. Additionally, the identified deficiency must be closely related to the plaintiff's actual injury. *Canton*, 489 U.S. at 385. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. at 390-91 (internal citation omitted). To show the existence of a continuing, persistent and widespread custom, a plaintiff "must . . . offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City and County of Denver,* 534 F.3d 1269, 1274 (10th Cir. 2008).

Here, Plaintiff does not identify any specific deficiencies in Aurora's training, nor does the Complaint contain any facts to suggest that the City was on notice of any alleged deficiency, particularly because, contrary to Plaintiff's allegations, chokeholds were specifically permitted under state law at the time of this incident. Additionally, the Complaint does not identify a single fact to suggest that similarly situated individuals have been mistreated in an allegedly similar circumstance. Furthermore, it appears that Plaintiff may be attempting to state a claim for failure to supervise, however, "[r]arely if ever is 'the failure of a police department to discipline in a specific instance . . . an adequate basis for municipal liability under *Monell*.'" *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 777 (10th Cir. 2013) (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1056 (10th Cir. 1993)).

Aurora respectfully requests the Court grant it permission to file a Motion to Dismiss Plaintiff's claims so that it can more fully address the defects in each claim.

Respectfully submitted,

*s/ Julia A. Bannon*

Julia A. Bannon
Senior Assistant City Attorney

c:    Michael H. Sussman, Esq.
      Indra Wood Lusero, Esq.