

**Josh A. Marks**                                                    **Email: jam@bhgrlaw.com**
Partner

March 8, 2022

**Via E-Mail: jackson_chambers@cod.uscourts.gov**
The Honorable R. Brooke Jackson
Alfred A. Arraj United State Courthouse
901 19th Street
Denver, CO 80294

  Re: *Baker v. City of Aurora*, U.S. District Court, Case No: 20-cv-03612-RBJ
     Summary Judgment Position Statement

Dear Judge Jackson:

  Daisy Baker ("**Plaintiff**"), the estranged widow of the decedent, David Baker ("**Mr. Baker**"), brings this action against the City of Aurora ("**City**") alleging the City's failure to properly train its officers resulted in the violation of Mr. Baker's Fourth Amendment rights and caused him conscious pain and suffering. [Doc. No. 1, ¶32]. The City seeks summary judgment because Plaintiff cannot produce sufficient evidence to succeed on her failure-to-train theory of municipal liability in that she cannot establish the elements of a prima facie case as would be required to demonstrate the City's liability.

  **A.**  **Factual Background**

  Mr. Baker was a large man at 5'9" and 237 pounds. He had a history of substance abuse (alcohol and marijuana), mental illness (depression with psychotic features, PTSD, bipolar disorder), and domestic violence against both his wife and his son. Mr. Baker formerly resided with his family but had left the residence at Plaintiff's request a few weeks prior to these events.

  On the evening of December 17, 2018, three Aurora Police Department ("**APD**") officers were dispatched to the Baker residence in response to a 911 call reporting a physical domestic disturbance. Ryan Stoller, Kacie Sawyer, and Kristi Mason arrived at the Baker's apartment to find Mr. Baker had another man in a chokehold with a sweatshirt pulled over the man's head and tightened around his neck. After being told to "let go" and to "stop," Mr. Baker turned his attention to the officers. From that point, an intense and violent struggle ensued as the officers attempted to gain compliance and end Mr. Baker's resistance to arrest.

  Taser applications and baton strikes had no effect on Mr. Baker as he actively fought the three officers while grunting, growling, and uttering religious statements. Mr. Baker twice threw Mason to the ground. He grabbed Stoller's baton and turned out of a carotid hold. He twice placed his hands around Stoller's neck. More than six minutes into the confrontation, the three officers together were able to take Mr. Baker to the ground on their fourth attempt. Mr. Baker continued to actively resist for several more minutes. While Sawyer and Mason each held down a kicking leg, Stoller was on Mr. Baker's backside in a rear mount position using his arm to alternate between a carotid hold and a cross face technique.[1] As Stoller felt resistance, he would apply the carotid hold. When the resistance subsided, he would use the cross-face technique.

  Mr. Baker continued to kick after being handcuffed and the officers tried to use a leg hobble. Stoller got up and off of Mr. Baker as the attempt to hobble continued. After the attempt to hobble had

---

[1] When using a cross face control hold, the forearm is elevated to just below the cheek bone and apply pressure to sensitive parts of the head.

*Attorneys At Law*

 BHGRLAW.COM   Boulder, CO | 1712 Pearl St, 80302
Denver, CO | 1525 17th St., 80202
Cheyenne, WY | 1623 Central Ave., Ste 204, 82001
Irvine, CA | 300 Spectrum Center, Ste. 400, 92618   Office 303.402.1600
Fax 303.402.1601

been abandoned and more than forty seconds after Stoller had gotten up and off of Mr. Baker, an officer stated that he was no longer kicking. Mr. Baker appeared to be unconscious. He was rolled to his side and emergency medical services was called in from their staging area. Mr. Baker later was pronounced dead.[2]

**B.       Summary Judgment is Appropriate.**

To establish a city's liability under 42 U.S.C. §1983 for inadequate training of police officers in the use of force, a plaintiff must first prove the training was in fact inadequate and then must satisfy the following requirements: (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city towards persons with whom police officers come into contact; and (4) there is a direct causal link between the constitutional deprivation and the inadequate training. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 841-842 (10th Cir. 1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989) ("*Canton*")). While the Plaintiff's failure to meet any one these prongs will result in judgement for the City, in this case Plaintiff cannot meet three of the elements.

**1.       Plaintiff cannot prove that the training at issue was inadequate.**

Plaintiff suggests the City failed to train its officers with respect to de-escalation. However, APD officers have significant de-escalation training. The record reflects attendance at the Aurora Police Academy and two separate 2018 in-service trainings with regard to de-escalation for all three officers. This in-service training included the use of de-escalation in the context of the use of force.

Notably, upon deposition Stoller recalled he had attempted to de-escalate the situation with Mr. Baker during the first lull in the encounter as both men were attempting to recover their breath. Sawyer and Mason confirm that Stoller attempted to reason with Mr. Baker. This interaction is also reflected in the body worn camera footage where Stoller can be seen putting his baton back into its holster and attempting to engage verbally with Mr. Baker in a calm manner.

Plaintiff further alleges that the City failed to forbid the use of a chokehold. [Doc. No. 1, ¶32] The APD does forbid the use of the chokehold and there has been no evidence adduced to suggest otherwise. Mr. Baker was never subjected to a chokehold by APD officers. Rather, a carotid control hold was employed in the officer's attempts to stop Mr. Baker from resisting arrest so that he could be handcuffed. According to department directive 5.3.2, the carotid control hold may be used when an officer is met with violent resistance and other lesser means have been tried unsuccessfully or are not feasible. Unlike a choke hold, a carotid hold does not restrict a suspect's airway. As described above, the officers here were met with violent resistance and other lesser means, including tasers and batons, were ineffective. Plaintiff cannot demonstrate that this policy was inadequate.

The APD devoted a significant amount of time and attention including lectures, hands-on training, and written and practical tests to teach the use of the carotid control hold prior to June 2020, when the practice was discontinued.[3] This training covered the mechanics of the hold, where pressure is applied, risks, research, and best practices and step by step application and practical training. The City instructed its police officers on how long the hold should be applied as part of its curriculum. Annual re-certification for the carotid control hold technique, including a practical test, was required for every sworn member of the department.

Training records show that Stoller received training in the use of the carotid hold at the Basic Academy (6 hours). Additionally, Stoller completed a 40-hour course to become an Aurora arrest control instructor in June of 2018. Stoller assisted in the instruction of the technique at the annual re-certification on October 4, 2018. Further, when asked, Stoller was able to describe and demonstrate a

---

[2] While the medical examiner's findings did not include typical indicia of asphyxia, Mr. Baker's death was attributed to positional asphyxia. The findings also showed an enlarged heart and 90% occlusion of the left coronary arteries.

[3] The Law Enforcement Accountability and Integrity Act, signed into law well after this event on June 19, 2020, banned carotid control holds. *See* C.R.S. § 24-31-901, et seq.

carotid hold, correctly recite the parameters with regards to length of time the hold was to be used, as well as identify the recovery steps to be taken following use of the hold on an individual experiencing excited delirium.

The record as developed demonstrates that APD officers were trained not to use the chokehold and were instead provided thorough training on the use of the carotid control hold. The record as developed demonstrates that APD officers are provided de-escalation training on a routine basis and that the officers involved here utilized that training at the moment it became practicable. Plaintiff cannot make the showing required to prove that the training provided to APD officers was constitutionally inadequate.

### 2. Plaintiff cannot show deliberate indifference on the part of the City.

A municipality can incur liability for a failure to train only upon proof of deliberate indifference. *Murphy v. City of Tulsa*, 950 F.3d 641 (10th Cir. 2019) (although city's evidence of training lacked detail, no fact-finder could reasonably infer deliberate indifference in training where the city trained its officers against the violation alleged). To satisfy the stringent deliberate indifference standard, a pattern of similar constitutional violations by untrained employees is ordinarily necessary. *Waller v. City & Cnty. of Denver,* 932 F.3d 1277, 1285 (10th Cir. 2019) (plaintiff failed to show a pattern of prior similar misconduct or that the need for more or different training was otherwise so obvious that the city could be said to have been deliberately indifferent to the need). Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. *Connick,* 53 U.S. at 62 (citation and quotation omitted).

Plaintiff has produced no evidence to support a finding of deliberate indifference on the part of the City. There had not been other instances in which APD officers violated individual's constitutional rights by their inappropriate use of the carotid control hold or unsuccessful efforts at de-escalation as of December 17, 2018, that would have provided the City notice that the training it was providing its officers was inadequate or that would suggest that the City's training decisions were deliberately indifferent. Moreover, Plaintiff cannot point to any decision-maker who could be said to have disregarded the risk of injury to an arrestee by rejecting suggested training improvements in the use of the hold employed upon Mr. Baker or de-escalation training.

### 3. Plaintiff cannot show a direct causal link.

In order to demonstrate a direct causal link between the constitutional deprivation and the allegedly inadequate de-escalation training, Plaintiff must demonstrate how the City's alleged failure to provide training regarding de-escalation actually caused the officer's imposition of excessive force. *Carr v. Castle*, 337 F.3d 1221, 1231 (10th Cir. 2003) (finding that even if some inadequacy of training had been found, plaintiff remained unable to demonstrate how it was the direct cause of the officer's actions which resulted in a civilian death). A general lack of training is insufficient. *Id*.

The record as developed shows that Mr. Baker was not responsive to any of the verbal commands given to him by the three officers. It demonstrates Mr. Baker was impervious to pain and incapable of effectively communicating with the officers in a coherent manner. This was a lengthy and violent encounter with an individual in a very agitated state. Additional or different training in de-escalation would have done nothing to alter Mr. Baker's mental status or the course of events. As such, any alleged deficiency in the City's training program regarding de-escalation could not have been a direct cause of the any constitutional violation here.

Based on the above, the City intends to pursue summary judgment on Plaintiff's sole remaining claim for relief. The City further requests that the Court set a briefing schedule following its review of the Position Statement and Plaintiff's response.

Very truly yours,

Josh A. Marks

3