# SUSSMAN & ASSOCIATES
~Attorneys at Law~

| MICHAEL H. SUSSMAN | 1 Railroad Ave. – Suite 3 | PARALEGAL |
| JONATHAN R. GOLDMAN | P.O. Box 1005 | JOYMARIE LEWISHOLLIDAY |
| MARY J. WHATELEY | Goshen, New York 10924 | |

(845) 294-3991
Fax: (845) 294-1623
sussman1@sussman.law

March 16, 2022

Honorable R. Brooke Jackson
Alfred A. Array United States Courthouse
901 19th Street
Denver, Colorado 80294

> Re: *Baker v. City of Aurora*, 20-cv-03412 (RBJ) – Response to Defendant's Summary Judgment Position Statement

Dear Judge Jackson,

I represent the estate of David Baker and write in response to defendant City's motion for leave to file a motion for summary judgment.

Plaintiff has hired a police practices expert who has opined that defendant City failed to properly train officers to de-escalate predictable confrontations of the sort which occurred here. Defendant's version of the facts neglects to mention that, at various times during their interaction with Mr. Baker, defendant officers escalated the struggle. They failed to utilize generally accepted techniques for dealing with an emotionally upset individual and, instead, repeatedly increased their use of force. They did so despite the fact that Mr. Baker posed no threat then to any civilian and de-escalation techniques were available and should have been used.

Additionally, after being tackled to the ground, Mr. Baker did not resist the officers and the available video belies defendant's contrary representation. Medical testimony will establish that the proximate cause of Mr. Baker's death was a carotid hold administered for approximately five minutes by a member of the City of Aurora Police Department, PO Stoller, once Mr. Baker was on the ground. Such holds should be relinquished within at most thirty seconds. Stoller's current explanation for what he did contradicts his prior statements. Supervisory officers of the department were within ten feet of PO Stoller as he choked Mr. Baker to death and failed to intervene to stop his use of this hold despite Baker's passivity. Then, during the department's investigation, both Stoller and the officers who observed the hold's use lied about what occurred. The Department issued no discipline of any sort against either the officer who so engaged or his superiors.

In light of the facts and the opinions which will be offered by a highly qualified and experienced expert, plaintiff will be able to establish that the officers exceeded constitutional limitations on the use of force; that the use of such force arose in a highly predictable context, that Aurora failed to train with regard to de-escalation techniques and that there is a direct link between this failure and the tragic result.

The City of Aurora permitted [until state law forbade the practice after this event] use of carotid control holds. The City makes much of the distinction between this hold and a chokehold, but, in reality, the medical testimony will establish that there is little difference, and both can be equally lethal. Here, that hold was applied to a man who had already been subdued by numerous police officers. PO Stoller continued to apply it in the presence of superiors who were standing all around Mr. Baker who was prone and motionless. A reasonable jury could find this was used for punishment, not restraint. The lack of training by this department, it could also conclude, is made manifest by the failure of any of these officers to cause Stoller to desist from the hold well after Mr. Baker was entirely passive.

Nor does plaintiff agree that the law requires a showing of a "pattern of similar constitutional violations." Defendant acknowledges this, stating that this is ordinarily necessary. The need for training on such holds was patently obvious to any police agency by December 2018 and the inadequacy of this department's training is best discerned by the facts of the case and Mr. Stoller's use of such a hold for what he estimated at deposition was five minutes without interference by any of the approximately 12 officers and superiors in his presence. Had the department properly trained officers to use such holds [and it acknowledges the need for such training in its own submission], it is simply inconceivable that an officer would engage in such a hold for that length of time and that supervisory officers would permit this to continue, as they did. In light of the known risks of such a hold and the medical examiner and our forensic expert's conclusion as to cause of death, the act and omissions of the responding officers directly caused Baker's demise.

We believe that fact issues exist as to the nature and adequacy of the department's training with regard both to de-escalation and the proper use of the carotid hold. We believe there are no fact issues as to the proximate cause of Mr. Baker's death – that is, the use of such a hold as occurred here.

Thank you for your consideration in these regards.

Respectfully submitted,

Michael H. Sussman

cc: Josh A. Marks, Esq., counsel for defendant by electronic filing